## Eden Park Borough Incorporation

Argued April 24, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John E. Evans, Sr.,* with him *Evans, Evans & Spinelli,* for appellants.

*Louis Rosenberg,* for appellee.

OPINION BY HIRT, J., July 19, 1945:

This is an appeal from a decree of the Quarter Sessions Court of Allegheny County incorporating a part of Versailles Township in that county into a borough. The decree will be affirmed.

The borough was carved out of the southwesternmost part of the township and comprises 850 acres of land with a total population of about 1700. Within the area there are an extensive manufacturing and business district and six so-called villages each with a name of its own. These settlements are scattered throughout the section; the intervening area is farm land. Some years ago, the City of McKeesport bought a 200 acre tract of

township land, adjoining the city on but one side, and annexed it to the city for park purposes. The main area as incorporated, lies to the south of the park but the borough also extends around the east and north boundaries of the park in a corridor 300 feet wide. This narrow strip of land, for the most part rough farm land, connects two settlements in the northwest section with the villages to the south. The borough as a whole comprises about one-sixth of the area of the former township and on the north extends westwardly along the City of McKeesport proper. The former third election district of the township is coextensive with the borough and one of the three township elementary schools is within its boundaries. The petition for incorporation was signed by upwards of 90% of the freeholders within the area, and only one resident freeholder has excepted to the decree of incorporation.

Since the decision in the *Borough of West Philadelphia*, 5 W. & S. 281, there has been broader construction of the successive acts relating to the incorporation of boroughs. It is no longer the law that two or more distinct villages, with intervening farm land, may not be incorporated into one borough. In *Borough of Blooming Valley*, 56 Pa. 66, there was a collection of houses extending along a state road, and the proceeding creating the borough was affirmed though much of the 1,203 acres within its boundaries was farm land. In *Edgewood Borough*, 130 Pa. 348, 18 A. 646, referring to existing legislation, it is said: "The law contemplates the formation of boroughs out of villages and adjacent territory." The incorporation of three villages with adjacent vacant land was approved in *Taylor Borough, Atherton's Appeal*, 160 Pa. 475, 28 A. 934.

The question is not whether the villages are physically distinct and separated, or locally known by different names, but rather whether they, together with appurtenant lands, form one harmonious whole with interests in common which can be properly subserved by

borough government. *Moosic Borough Incorporation,* 12 Pa. Superior Ct. 353; *Alliance Borough,* 19 Pa. Superior Ct. 178. The controlling consideration, under the law, is not the "extent and character of the land", if the people affected are willing that it shall be included in the borough. *Borough of Blooming Valley,* supra. And it is no objection that this section of the former township is irregular in shape or that the settlements within it are connected by a tenuous corridor but 300 feet wide. The corridor fulfills the requirement of continuity and unites the two parts of the area into one cohesive whole. The important fact in this proceeding is the community of interests of freeholders and residents throughout the area. Nature has made for homogeneity of the area here involved by a ridge which marks its eastern boundary. This physical barrier has been an effective dividing line separating the township into two parts. To the north and east of the ridge some police and fire protection have been made available to citizens of the township but such public services as the township supplied, stopped at the ridge and were never extended into the area here involved. The needs of those who live in the area have coalesced them into a single community though their homes do not form one compact settlement. The general demand for public services—police and fire protection, water service and the means of sewage disposal—prompted this proceeding and it is the intention to supply them through borough government. Proceedings of this nature involve, largely, issues of fact and questions of expediency for the quarter sessions. *Leetsdale Borough,* 25 Pa. Superior Ct. 623. We are unable to find any abuse of discretion in the finding of a community of interests within the area involved, or in the decree incorporating it into a borough.

The petition in this proceeding was filed on September 28, 1943, and the court then ordered publication of notice of the proceeding "according to the provisions

of the Act of May 4, 1927 . . . and its amendments."
No notice was given pursuant to that order but on
October 14, 1943, on motion, the court made a second
order directing notice by publication "in one news-
paper in the county and in the Pittsburgh Legal Jour-
nal once a week for a period of not less than thirty (30)
days before the first Monday of December 1943", the
beginning of the December term. Petitioners complied
with this order. Section 204 of the Borough Act of
May 4, 1927, P. L. 519 (re-enacted with amendments
August 6, 1941, P. L. 881) 53 PS 12254, provides that
"upon presentation to the court, the application shall
be filed with the clerk, and notice thereof shall be given
in one newspaper in the county for a period of not less
than thirty days immediately before the next regular
term following the filing thereof. . . ." In Allegheny
County, by rule of court, the traditional quarterly
terms of quarter sessions were supplanted by monthly
terms of court, except during the summer. It is con-
tended that the court was without jurisdiction in this
proceeding because, under the act, petitioners were
obliged to give thirty days notice prior to the Novem-
ber term of court, which was the then "next regular
term following the filing" of the petition. It is con-
ceded that the proceeding, otherwise, was regular.

The general rule is that where an act of assembly
commands an act to be performed within a certain time,
the words employed are mandatory. And it is not
within the power of courts to waive or dispense with
such requirement. *East Lake Road and Payne Ave.*,
309 Pa. 327, 163 A. 683; *Harris v. Mercur (No. 1)*, 202
Pa. 313, 51 A. 969. In our view, however, there has
been compliance with the statutory procedure in this
case, in essential respects, without violence to the above
principle. A review of the history of the statutes re-
lating to the incorporation of boroughs, beginning with
the Act of April 1, 1834, P. L. 163, indicates that the
legislature, in the successive acts of assembly, con-

templated the conventional quarterly terms of court in the procedure prescribed. The purpose of notice "before the next regular term" was to afford the court sufficient time to conduct the necessary hearings, to consider the evidence, and, unless further and extended investigation became necessary, to decide the question by an appropriate order, all within one term of court. The secondary intention of the legislature was to provide for a hearing on the petition with reasonable promptness, after it was signed, and not at a late date when changed circumstances may have worked a change of sentiment in the community. The act in question provides in §202 that "the application for incorporation . . . shall be signed within three months immediately preceding its presentation to the court." The filing date, as well as the date of the second order for publication of notice, was within this period.

The provision of the act requiring notice by publication for the full period of thirty days before the term of court at which the application will be heard, undoubtedly is mandatory. The procedure in this respect was fully complied with in the present case. It is immaterial, but it may be noted that appellants were in no way prejudiced by the failure of petitioners to give notice prior to the November term rather than to a term of court beginning one month later. They all appeared generally and had their day in court. If the defect amounted to no more than inadequacy, it would have been cured by their appearance and defense. *Edgewood Borough,* supra; *Camp Hill Borough,* 142 Pa. 511, 21 A. 978; *Taylor Borough, Atherton's Appeal,* supra. The notice, adequate as to form, was not given before the next monthly term following the filing of the application. But in our view, the fact that the notice did not thus strictly comply with the letter of the statute, did not oust the jurisdiction of the court in this proceeding. Cf. *Inc. of Castle Shannon Borough,* 75 Pa. Superior Ct. 162.

It may be assumed that the legislature intended to supply a substantially uniform practice in the courts throughout the state. The required notice, following the filing of the petition prior to the next term, is mandatory as applied to courts observing the conventional quarter sessions. But, in our opinion, as to a court sitting in monthly terms, the provision for notice "immediately before the next regular term" may be regarded as directory merely. It is no new principle that statutes are to be so construed as to give effect to legislative intent. Appellants received all they were entitled to, in full thirty days notice and the opportunity for a hearing within a period of but a few days more than two months after the petition was filed. Reading the statute in the light of its purpose as indicated by its legislative history, we think that the requirements of the statute were fulfilled in this case by notice to the second, rather than the first, monthly term of court following the filing of the application.

Decree affirmed at appellants' costs.